UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARY H. EWING,

    Plaintiff,

v.                                                                 Case No. 1:10-cv-17
                                                                     Hon. Robert J. Jonker

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
                                         /

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB).

Plaintiff was born on March 12, 1966 (AR 134).[1] She earned a GED and had additional training as a certified nursing assistant (CNA) (AR 152). Plaintiff alleged a disability onset date of May 17, 2005, when she suffered injuries in an auto accident (AR 45, 134). She had previous employment as an aide in a nursing home, a bartender and a factory production worker (AR 147). Plaintiff identified her disabling conditions as pain from head to toe, spine/disc problems, memory loss, headaches, dizziness and numbness (AR 146). On March 19, 2009, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying benefits (AR 76-83). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of

not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step. At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of May 17, 2005, and met the insured status requirements of the Social Security Act through December 31, 2010 (AR 78). At step

3

two, the ALJ found that plaintiff suffered from severe impairments of: multilevel degenerative disc disease with spinal stenosis at C5-6 and degenerative joint disease of the right shoulder (AR 78). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1(AR 80).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC):

> [T]o perform sedentary work as defined in 20 CFR 404.1567(a), allowing claimant the option to sit or stand alternatively at will provided that the claimant is not taken off task more than 10% of the work period. Claimant can never climb ladders, ropes or scaffolds, or crawl. Claimant can occasionally climb ramps or stairs, balance, stoop, crouch and kneel. Claimant can only occasionally reach overhead. Claimant can frequently handle objects (gross manipulation) and frequently finger (fine manipulations). Claimant must avoid exposure to unprotected heights.

(AR 80). The ALJ also found that plaintiff was unable to perform any of her past relevant work (AR 82).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of sedentary jobs in the national economy (AR 82-83). Specifically, plaintiff could perform the following jobs in West Central and Southwest Michigan: call out operator (8,000 jobs); information clerk (4,000 jobs); and order clerk (1,000 jobs) (AR 82-83). Accordingly, the ALJ determined that plaintiff was not disabled under the Social Security Act from May 17, 2005 through the date of the decision (March 19, 2009) (AR 83).

## III. ANALYSIS

Plaintiff raised four issues on appeal:

**A.  Whether the Commissioner erred as a matter of law at Step Three of sequential evaluation in failing to assign controlling weight to the treating physician's opinions as required by 20 C.F.R. § 404.1527(d)(2), resulting in a flawed assessment of residual functional capacity.**

Plaintiff contends that the ALJ failed to give controlling weight to the opinion of Dr. Michael Larson, an agency physician who prepared a mental RFC assessment in July 2009 (AR 762-68).

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). *See* 20 C.F.R. § 404.1527(d)(2) ("[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight").

As an initial matter, there is no evidence that Dr. Larson was a "treating source" under § 404.1527(d)(2). The record reflects that he examined plaintiff one time on July 23, 2009 (AR 762-66). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir.

1994). This doctrine does not apply to a physician who only examines a person on one occasion. *Id. See, e.g., Atterberry v. Secretary of Health and Human Services*, 871 F.2d 567, 572 (6th Cir. 1989) ("[c]ontrary to the claimant's suggestion, [the doctor involved] is not a treating physician given the fact that he evaluated the claimant on only one occasion").

Furthermore, Dr. Larson's opinion, prepared approximately four months after the ALJ entered his decision denying benefits, was not part of the administrative record reviewed by the ALJ. Rather, this opinion, which was not indexed as an exhibit in the agency proceedings, was filed in this court as part of a supplemental transcript identified as "Attorney/Representative - Supplied Evidence." *See* Supplemental Transcript (docket no. 15). When a plaintiff submits evidence that has not been presented to the ALJ, the court may consider the evidence only for the limited purpose of deciding whether to issue a sentence-six remand under 42 U.S.C. § 405(g). *See Sizemore v. Secretary of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir.1988).[2] Plaintiff neither seeks a sentence-six remand with respect to this medical record nor provides any argument in support of such a remand. Rather, plaintiff's vague request for relief is in the nature of a sentence four remand seeking reversal of the ALJ's decision and the issuance of a new decision on remand. Under these circumstances, plaintiff has presented no legal basis for the court to determine whether good cause exists for the failure to present this new evidence or whether this new evidence is material. *See Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995) (a court need not make the lawyer's

---

[2] Section 405(g) authorizes two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing the decision of the Secretary (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the Secretary (sentence-six remand). *See Faucher v. Secretary of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994).

case by scouring the party's various submissions to piece together appropriate arguments). Accordingly, plaintiff's claim with respect to Dr. Larson's opinion should be denied.

> **B.    Whether the Commissioner erred in determining plaintiff's RFC by not incorporating all of her impairments.**

Next, plaintiff contends that the ALJ should have included additional restrictions in plaintiff's RFC as follows:

> Due to her severe impairments, Ms. Ewing should have been limited to only occasional handling and fine manipulations with her right hand, simple routine tasks, and only occasional contact with the public or coworkers. Accommodations should also have been made in her RFC for use of a cane.

Plaintiff's Brief at pp. 22-23.

RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. § 404.1545. RFC is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs" on a regular and continuing basis. 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c); *See Cohen v. Secretary of Health and Human Servs.*, 964 F.2d 524, 530 (6th Cir. 1992). Although a function-by-function analysis is desirable, an ALJ is not required to produce such a detailed statement in writing. *Delgado v. Commissioner of Social Sec.*, 30 Fed. Appx. 542, at 547-548 (6th Cir. 2002) (citations and quotation marks omitted). Rather, "the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Id.*

Here, the ALJ adequately articulated how the evidence supported the RFC determination. Plaintiff's activities of daily living were inconsistent with her complaints, specifically plaintiff's testimony that she drives, cooks small meals, washes dishes, does laundry, vacuums, sweeps, shops and has no self care problems (AR 81). While plaintiff and her mother stated plaintiff used a cane constantly, plaintiff testified that she sometimes does not use the cane (AR 81). Plaintiff testified as follows:

> Q. You use the cane around your house?
>
> A. No. No. I don't have to use it in my house.
>
> Q. Only when you go outside?
>
> A. Right, on uneven ground that I'm not used to.

(AR 61).

In addition, the ALJ accounted for plaintiff's difficulties in gross and fine manipulation by limiting those activities to "frequently" handling and fingering objects based upon the physical RFC assessment (AR 80, 437).[3] With respect to plaintiff's claim of restrictions due to mental impairments, the ALJ found that while plaintiff allegedly suffers from depression, she takes no medication for this condition (AR 81). The ALJ's determination that plaintiff had only mild restrictions of daily living was supported by a Psychiatric Review Technique form (PRTF) prepared by a psychologist (AR 80, 443-56). *See* discussion in § III.C., *infra*. Finally, the ALJ observed that there was no medical opinion stating that plaintiff was unable to work (AR 81).

---

[3] The court notes that the manipulative limitation of handling and fingering "frequently" is defined as "occurring one-third to two-thirds of an 8-hour workday (cumulative, not continuous)" (AR 435, 437).

Plaintiff's claims of increased limitations were based primarily upon her statements as opposed to medical evidence. *See* Plaintiff's Brief at pp. 20-23. The ALJ has adequately articulated how the medical evidence in the record supports the RFC assessment. Accordingly, plaintiff is not entitled to relief on this claimed error.

    **C.    Whether the Commissioner erred in failing to properly evaluate and articulate whether plaintiff's impairments met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1.**

Plaintiff contends that the ALJ failed to properly evaluate her condition under Listings 1.02, 1.04 and 12.04. Plaintiff's Brief at pp. 23-24.

The "Listing of Impairments" is set forth at 20 C.F.R. § 404, Subpt. P, Appendix 1. The Listing "describes, for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 404.1525. The medical criteria for a listing, i.e., the inability to perform "gainful activity," presents a higher level of severity from the statutory standard, i.e., the inability to perform "substantial gainful activity." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). "The reason for this difference between the listings' level of severity and the statutory standard is that, for adults, the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Id.*

A claimant bears the burden of demonstrating that he meets or equals a listed impairment at the third step of the sequential evaluation. *Evans v. Secretary of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir.1987). In order to be considered disabled under the Listing of Impairments, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals

9

one of the listed impairments." *Id.* An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. § 404.1525(d). A claimant does not satisfy a particular listing unless all of the requirements of the listing are present. *See Hale v. Secretary of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir.1987); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir.1984). *See, e.g., Thacker v. Social Security Administration*, 93 Fed.Appx. 725, 728 (6th Cir 2004) ("[w]hen a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency"). If a claimant successfully carries this burden, the Commissioner will find the claimant disabled without considering the claimant's age, education and work experience. 20 C.F.R. §§ 404.1520(d).

The ALJ addressed plaintiff's impairments as follows:

> The claimant was diagnosed with adjustment disorder with depressed mood upon consultative examination (Exhibit 9F). There is no evidence supporting a finding that she meets 12.04(A) criteria. She only described sleep problem due to pain and depressed mood. Global Assessment of Functioning (GAF) was 54. She has never undergone any therapy, been prescribed any psychotropic medication, been psychiatrically hospitalized, or complained of being depressed at most medical visits. Mental status examination in December 2005 was normal (Exhibit 2F). The undersigned concludes that adjustment disorder is not a severe impairment. She has a mild restrictions of activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and no episode of decompensation.
>
> Pertaining to listings 1.02 and 1.04, the claimant is not limited in ambulation or totally unable to perform manipulative activities with either upper extremity. Treatment notes do not show exacerbating effects from obesity (SSR 02-1p).

(AR 80).

The ALJ's determination regarding Listing 12.04 is supported by the findings in the PRTF prepared by Matthew Rushlau, Ed. D. (AR 443-56). The ALJ set forth a rather cryptic explanation regarding Listings 1.02 (major dysfunction of a joint(s) (due to any cause)) and 1.04 (disorders of the spine), which did not involve such a detailed analysis. While it is unnecessary for the ALJ to address every piece of medical evidence, *see Heston*, 245 F.3d at 534-35, it would have been preferable for the ALJ to provide the court with a more detailed explanation for the conclusions reached at step three of the sequential evaluation. Nevertheless, the court concludes that a remand would serve no purpose because plaintiff has failed to demonstrate that she met the requirements of any of the Listings. *See Evans*, 820 F.2d at 164 (the claimant carries the burden of showing that her condition meets or equals a listed impairment).

Plaintiff does not identify the appropriate requirements of Listings 1.02, 1.04 or 12.04, let alone demonstrate that she meets or equals those requirements. *See Land v. Secretary of Health and Human Servs.*, 814 F.2d 241, 245 (6th Cir.1986) (an impairment will be deemed medically equivalent to a listed impairment if the symptoms, signs and laboratory findings as shown in the medical evidence are at least equal in severity and duration to a listed impairment). Plaintiff has not provided the court with any basis upon which to conclude that the ALJ would find that her condition meets or equals the requirements of Listings 1.02, 1.04 or 12.04 on remand. "No principle of administrative law or common sense requires [a reviewing court] to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989).

Accordingly, plaintiff's claim that the ALJ failed to properly evaluate or articulate whether plaintiff met or equaled a listed impairment at step three of the sequential evaluation should be denied.

> **D. Whether the Commissioner failed to sustain his burden that there is other work in the national economy that [plaintiff] can perform.[4]**

Plaintiff contends that the ALJ improperly accepted testimony from the VE which relied on job descriptions set forth in the "outdated" United States Department of Labor, Dictionary of Occupational Titles ("DOT") rather than the job descriptions in the more recent "Occupational Information Network ("O*NET"). Plaintiff's Brief at pp. 27-28.

An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779. However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Services.*, 927 F.2d 228, 231 (6th Cir. 1990). *See also Stanley v. Secretary of Health and Human Services.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals").

---

[4] In presenting this issue, plaintiff's brief erroneously refers to her as "Ms. Roberts." *See* Plaintiff's Brief at p. 2.

The pertinent regulation, 20 C.F.R. § 404.1566(d) and (e), provides that while the agency can take administrative notice of reliable job information available from various publications (including the DOT), it can also use the services of a vocational expert or other specialist "[i]f the issue in determining whether you are disabled is whether your work skills can be used in other work and the specific occupations in which they can be used." The social security regulations do not require the Commissioner or the VE to rely on classifications in a particular source, such as the DOT. *Conn v. Secretary of Health and Human Services*, 51 F.3d 607, 610 (6th Cir.1995). It is well established that while the ALJ may take judicial notice of the classifications in the DOT, the ALJ may accept testimony of a VE that is different from the DOT. *Id*. In this case, the ALJ chose to use the services of a VE to determine whether plaintiff could perform other work in the national economy. In reaching his determination, the VE relied on his personal experience, his knowledge of the workplace and other sources such as the DOT, "the U.S. Department [sic] Selected Characteristics of the Dictionary of Occupational Titles, the U.S. Department of Labor Bureau of Labor, Occupational Outlook Handbook," and the "U.S. Department of Labor Bureau of Labor Statistics surveys" (AR 67-68). Under these circumstances, neither the ALJ nor the VE acted improperly.

In addition, the court disagrees with plaintiff's position that the ALJ erred by adopting the VE's opinions based upon the "outdated" DOT. On the contrary, while the DOT appears on the list of publications from which the agency can take "administrative notice of reliable job information," the "O*NET" does not. *See* 20 C.F.R. § 404.1566(d)(1)-(5). Furthermore, to the extent that plaintiff contends that the ALJ erred by accepting a flawed VE's opinion, this contention fails. The ALJ does not have an affirmative duty to interrogate a VE to expose potential errors in

his expert opinions. *See Lindsley v. Commissioner of Social Security*, 560 F.3d 601, 606 (6th Cir. 2009). "This obligation falls to the plaintiff's counsel, who had the opportunity to cross-examine the VE." *Beinlich v. Commissioner of Social Security*, 345 Fed.Appx. 163, 168-69 (6th Cir. 2009) (plaintiff's counsel had obligation to cross-examine the VE and bring out any conflicts between the VE's testimony and the DOT; "[t]he fact that plaintiff's counsel did not do so is not grounds for relief").

The hypothetical question posed by the ALJ was supported by substantial evidence and included limitations which the ALJ determined as credible. Accordingly, plaintiff is not entitled to relief on this claim.

## IV.     Recommendation

For the reasons discussed, I respectfully recommend that the Commissioner's decision be affirmed.


Dated: November 29, 2010                          /s/ Hugh W. Brenneman, Jr.
                                                  HUGH W. BRENNEMAN, JR.
                                                  United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).